WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diana Marie Rubottom, | No. CV-25-03199-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Freedom Mortgage Corporation, et al., | |
| Defendants. | |

Pending before the Court is Defendant Freedom Mortgage Corporation's ("Freedom Mortgage" or "Defendant") Motion to Refer Case to the Bankruptcy Court (Doc. 59).[1] Plaintiff Diana Marie Rubottom ("Plaintiff") opposes the Motion (Doc. 68).  Upon review, the Court will grant Freedom Mortgage's Motion to Refer Case to the Bankruptcy Court.

## I.    Background[2]

Plaintiff Diana Marie Rubottom ("Plaintiff") alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, against Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union"), all of whom are credit reporting agencies ("CRAs") (collectively, the "CRA Defendants").  She also alleges FCRA claims against

---

[1] Freedom Mortgage also seeks dismissal of Plaintiff's claims. (Doc. 58).  That Motion to Dismiss is fully briefed (Docs. 68 & 71).  More recently, Plaintiff has filed a Motion to Amend (Doc. 82) her First Amended Complaint to reinstate Hyundai Capital America as a defendant.  This motion is also fully briefed (Doc. 85 & 87).  These pending motions shall be resolved by the Bankruptcy Court Judge.

[2] Unless otherwise noted, these facts are taken from Plaintiff's First Amended Complaint (Doc. 17).

Wells Fargo Bank, N.A. ("Wells Fargo"), Freedom Mortgage Corporation ("Freedom Mortgage"), TD Bank, N.A. ("Target"), and Hyundai Capital America ("Hyundai"), who she says improperly furnished CRA Defendants with her account information (collectively, "Furnisher Defendants") (hereafter, CRA Defendants and Furnisher Defendants collectively referenced as "Defendants"). (Doc. 17 at 1:27–2:8). Plaintiff also brings a claim against Freedom Mortgage for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C § 2601. (*Id.* at 2:8–10). Defendant Equifax settled with Plaintiff (Doc. 83) and was dismissed from this Complaint on March 13, 2026. (Doc. 95). Defendant Wells Fargo was dismissed from this Complaint on October 7, 2025. (Doc. 47). Defendant Hyundai was dismissed from this Complaint on October 10, 2025 (Doc. 48).[3]

Plaintiff filed a Chapter 11, Subchapter 5 Bankruptcy on March 22, 2023, in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court") (Case No. 2:23-bk-01792-BKM). (*Id.* at ¶ 45). On August 28, 2023, the Bankruptcy Court entered an Order Confirming Debtor's Plan of Reorganization (the "Plan"). (*Id.* at ¶ 47). The Plan contains the following language regarding Freedom Mortgage and the loan encumbering Plaintiff's primary residence (the "Loan"):

> Class I(a) consists solely of the Allowed Secured Claim of Freedom Mortgage relating to its first-position purchase-money security interest encumbering the Debtor's Residence. Class I(a) shall hold an Allowed Claim in the amount determined pursuant to the parties' pre-petition agreements, asserted to be $379,788.56 as of the Petition Date. The Class I(a) shall accrue interest at the contractual rate of 4.99%. Beginning on the Effective Date, the Debtor shall recommence payments to Class I(a) in the monthly amount provided by the partis' prepetition agreements, currently $2,376.39. The Debtor shall cure any outstanding escrow shortage, currently asserted to be $579.90, on the Effective Date if not otherwise cured through an adjusted monthly payment. Freedom Mortgage shall retain its lien on the Residence to the extent provided in the parties' prepetition agreements. Upon payment of the ClassI(a) Claim in full, Freedom Mortgage shall release its lien on the Residence. Class I(a) is not impaired.

(Doc. 59 at 5:15–25).

---

[3] However, Plaintiff seeks to re-add Hyundai in her Motion to Amend/Correct (Doc. 82) her First Amended Complaint (Doc. 17).

The Confirmation Order (the "Order") entered by the Bankruptcy Court states, "Entry of this Order shall grant the debtor a discharge of all debts provided in 11 U.S.C. §§ 1141(d)(1)(A) and 503 provided for in the Plan." (Doc. 17 at ¶ 61). The Bankruptcy was closed on November 13, 2023. (*Id.* at ¶ 50). Plaintiff alleges that upon the confirmation, "all of Plaintiff's dischargeable debts had zero-dollar balances." (*Id.* at ¶ 51).

Plaintiff alleges she disputed the CRAs' reporting of the Loan on September 4, 2024, January 17, 2025, and June 23, 2025, and that the CRAs forwarded those disputes to Freedom Mortgage. (*Id.* at ¶¶ 73, 79, 87, 110, 114, 128, 138, 151). Plaintiff also maintains that Freedom Mortgage failed to fully and properly investigate her disputes in violation of the FCRA. (*Id.* at ¶ 156). Plaintiff makes the same allegations regarding the other Furnishing Defendants. (*Id.* at ¶¶ 267–92).

In addition to the disputes, Plaintiff alleges that she sent a Qualified Written Request ("QWR") and Notice of Error ("NOE") to Freedom Mortgage on June 23, 2025, stating that she was no longer personally liable on the Loan and that Freedom Mortgage should not report her as owing the debt or that she should be assessed late fees. (*Id.* at ¶¶ 194–95). Freedom Mortgage sent Plaintiff a letter on July 2, 2025, acknowledging receipt of her NOE and notifying her that they would respond within thirty days. (*Id.* at 197). Plaintiff alleges Freedom Mortgage never responded again to her NOE, in violation of RESPA. (*Id.* at ¶ 198).

Now, Defendant asserts that Plaintiff's claims relate to core proceedings over which the Bankruptcy Court has jurisdiction. Plaintiff says these are non-core, private right damages under the FCRA and RESPA, not bankruptcy causes of action that arise under title 11 or arise in a bankruptcy case.

## II.    Legal Standard

Bankruptcy court jurisdiction is more limited than district courts. *See In re Valdez Fisheries Development Ass'n, Inc.*, 439 F.3d 545, 549 (9th Cir. 2006). Bankruptcy judges exercise the authority conferred under 28 U.S.C. § 1334. *See id.* at 547. Specifically, a bankruptcy court may hear and decide "any or all cases under title 11 and any or all

proceedings arising under title 11 or arising in or related to a case under title 11" under 28 U.S.C. § 157(a).  28 U.S.C. § 1334(b).

Proceedings "arising in" bankruptcy cases are generally referred to as "core" proceedings, and essentially are proceedings that would not exist outside of bankruptcy. 28 U.S.C. § 157(b)(2); *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005).

The bankruptcy court also has jurisdiction over a much broader set of cases: those proceedings that are "related to" a bankruptcy case.[4]  *In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013) (citation omitted); *In re Pegasus Gold Corp.*, 394 F.3d at 1193. The applicable test varies depending on the stage of the proceedings.  *See Lindsey v. Travelers Indem. Co.*, 2007 WL 841411, *2 (D. Ariz. Mar. 16, 2007).  In the post-confirmation context, the Ninth Circuit has adopted the "close nexus" test.  *In re Pegasus Gold Corp.*, 394 F.3d at 1194.  The "close nexus" test recognizes the limited nature of post-confirmation jurisdiction.  *Id.*  Nevertheless, a bankruptcy court's "related to" jurisdiction includes post-confirmation proceedings that have "a close nexus to the bankruptcy plan or proceeding."  *Id.* (quoting *In re Resorts*, 372 F.3d at 166).  Finally, "a Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."  *Travelers Indem. Co. v. Bailey (Travelers)*, 557 U.S. 137, 151 (2009).

The Court finds that the instant cause of action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (L), has a close nexus and is related to the bankruptcy case, and that the Bankruptcy court retained jurisdiction to interpret and enforce its own order at issue in this case.

### III.    Discussion

#### A. Core Versus Non-Core Proceedings

First, Defendant alleges that this proceeding is a core proceeding over which the Bankruptcy Court has jurisdiction under 28 U.S.C. §§ 157(b)(1), (2)(A), (2)(I) and (2)(L). (Doc. 59 at 1:19–21).  This Court agrees that these claims center on the dischargeability of

---

[4] The District Court of Arizona has a standing General Order which "refers to the bankruptcy judges for the district all cases under title 11 and all proceedings under title 11 or arising in or related to a case under title 11 as of the effective date of the present Bankruptcy Act."  General Order 01-15.

Plaintiff's debt owed to Defendant, a core proceeding under the relevant statute, providing jurisdiction to the Bankruptcy Court.

When a district court refers a case to a bankruptcy judge, the judge's statutory authority depends on whether Congress has classified the matter as a "core proceeding" or a "non-core proceeding." 28 U.S.C. §§ 157(b)(2). Core proceedings are those that are found to arise under the Bankruptcy Code (the "Code") are those that clearly invoke substantive rights created by federal bankruptcy law and include "matters concerning the administration of the estate," "determinations as to the dischargeability of particular debts," and the "confirmation of plans." 28 U.S.C. § 157(b)(2)(A), (I), (L).

Upon filing Chapter 11 bankruptcy, the full adjudicating and decision-making authority over "core proceedings" lies with the bankruptcy court. *See Wellness Int'l Network Ltd. v. Sharif*, 575 U.S. 665, 669–70 (2015) ("The [Bankruptcy Reform] Act … enabled bankruptcy courts to decide all civil proceedings arising under title 11 or arising in or related to cases under title 11.").

Plaintiff asserts that Freedom Mortgage violated the FCRA by failing to: delete and permanently block their account from being reported to the CRA Defendants; fully and properly investigate her disputes after being notified by the CRA Defendants; and review all relevant information while investigating her disputes. (Doc. 17 at ¶¶ 279–81). Plaintiff makes similar allegations as to the other Furnisher Defendants. (*Id.* at ¶¶ 269–89). These allegations depend on the premise that Plaintiff's debt had in fact been discharged, a fact upon which the parties disagree.

Plaintiff's claim is that her debt to Furnisher Defendants has been discharged under the confirmation of the Plan. Defendant disagrees. A determination of whether a debt is excepted from discharge is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I); *Carpenters Pension Tr. Fund for N. Cal. v. Moxley*, 734 F.3d 864, 868 (9th Cir. 2013); *In re Deitz*, 469 B.R. 11, 16 (B.A.P. 9th Cir. 2012), aff'd, 760 F.3d 1038 (9th Cir. 2014). Accordingly, this is a core proceeding for which the Bankruptcy Court has jurisdiction.

**B.  Related To Jurisdiction**

Alternatively, Defendant argues that this case is "related to" the Bankruptcy Case. This Court agrees and finds that the Bankruptcy Court also has ancillary jurisdiction over this matter.

"Related to" jurisdiction has been described as "very broad, including nearly every matter directly or indirectly related to the bankruptcy." *In re Wilshire Courtyard*, 729 F.3d at 1287; *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).  For post-confirmation cases, the court must apply the "close nexus" test to determine if the claim has the required close nexus to the bankruptcy case.  *See In re Wilshire Courtyard*, 729 F.3d at 1287–89.  Under the close nexus test, matters affecting "the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *In re Pegasus Gold Corp.*, 394 F.3d at 1194.

Plaintiff's claims concern her interpretation of the Plan because she believes her debts to Furnisher Defendants were discharged upon confirmation of it.  Defendants disagree.  These varying interpretations affect the implementation, consummation, execution, and administration of the confirmed Plan as the instant case could alter Plaintiff's rights and liabilities and may impact the handling and administration of the bankrupt estate.  *See In re ACI-HDT Supply Co.*, 205 B.R. 231, 237 (B.A.P. 9th Cir. 1997) ("[A] civil proceeding is 'related to' bankruptcy if its outcome could conceivably have any effect on the bankruptcy estate").  The differing interpretations meet the close nexus test and establish "related to" jurisdiction.  *See In re Wilshire Courtyard*, 729 F.3d at 1289 (close nexus existed in closed bankruptcy case).  Therefore, the Court finds the bankruptcy court has "related to" jurisdiction to adjudicate Plaintiff's claims.

**1.  Ancillary Jurisdiction**

The Supreme Court has confirmed that bankruptcy courts have jurisdiction to interpret their own prior orders. *Travelers*, 557 U.S. at 151.  A bankruptcy court's ancillary jurisdiction is "a close cousin to 'related to' jurisdiction."  *See In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), aff'd in part 213 B.R. 633 (S.D.N.Y 1997)

("[B]ankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant in 28 U.S.C. § 1334.").

After Plaintiff filed for Chapter 11 Bankruptcy, the Bankruptcy Court entered an Order confirming her Plan. (Doc. 17 at ¶¶ 45, 47). The Plan includes language about Plaintiff's Freedom Mortgage account. (Doc. 59 at 5:15–25). Plaintiff believes that all of her dischargeable debts had zero-dollar balances. (Doc. 17 at ¶ 51). However, Defendant contends that Plaintiff's residential mortgage loan, as well as her debts to the other Furnisher Defendants, were excepted from discharge. (Doc. 59 at 5:10–12). Interpretation of the Plan is necessary for this proceeding.

This Court finds that the Bankruptcy Court has ancillary jurisdiction to adjudicate these claims.

### C. The Bankruptcy Court's Retention of Jurisdiction

"Ordinarily, once the bankruptcy court confirms a plan of reorganization…[a] debtor is usually without the protection of the bankruptcy court." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 589 (9th Cir. 1993). As the Supreme Court has explained, a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders" even after it confirms a Chapter 11 plan. *Travelers*, 557 U.S. at 151. Similarly, "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." *See In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002).

Additionally, Article 17 of the Plan, "Retention of Jurisdiction," states, in relevant part, "[n]otwithstanding the confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for all matters arising out of, or related to, the Case and this Plan, including, but not limited to the following matters:…c) Determination and adjudication of any disputes that arise regarding the interpretation of any provision of this Plan;…f) Enforcement of any provisions of the Plan and any and all documents related to the Plan." (Doc. 59 8:13–19). The Order further states that "[t]he United States Bankruptcy Court for the District of Arizona shall have original and exclusive jurisdiction over disputes arising

under or related to the Plan and this Order." (*Id.* at 8:19–22).

The relevant claims arise from differing interpretations of the Plan, as discussed above, and provide for the Bankruptcy Court's jurisdiction to determine the dischargeability of Plaintiff's debt to Defendants. Case law and the language of the Order support the Bankruptcy Court's retention of jurisdiction to hear these claims.

**IV.    Conclusion**

The Court finds that the instant cause of action arises out of and is related to the Bankruptcy Case. The Bankruptcy Court also retains jurisdiction over any matters concerning its approved Order and Plan, as provided for in the language of the Plan, the Order, and through relevant case law. Therefore, the Court grants Defendant's Motion for Referral to Bankruptcy Court. Consequently, the Court determines that it is appropriate for the District of Arizona Bankruptcy Court to take jurisdiction over this case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Refer to Bankruptcy Court (Doc. 59) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court refer this matter to the bankruptcy court to make proposed findings and conclusions based on the merits of the case, including but not limited to, Defendant's Motion to Dismiss (Doc. 58) and Plaintiff's Motion to Amend (Doc. 82).[5]

**IT IS FINALLY ORDERED** that this matter shall be **STAYED** pending referral to the Bankruptcy Court. The parties shall file status reports on the Bankruptcy proceeding on **October 3, 2026**, and every six months thereafter.

Dated this 10th day of April, 2026.

Honorable Diane J. Humetewa
United States District Judge

---

[5] On April 10, 2026, Freedom Mortgage filed a discovery dispute regarding the scheduling of its deposition. (*See* Doc. 96). This matter should be raised with the Bankruptcy Court in accordance with the Bankruptcy Judge's procedures. Accordingly, the Court will take no action on the discovery dispute.